UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  00-08986-CIV-ALTONAGA

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

ARLINE GRANT, *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiff's Motion for Permanent Injunction ("Permanent Injunction Motion" or "Motion") [ECF No. 130], filed on January 13, 2012.  The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND[1]

In 2000, Plaintiff, the United States ("Plaintiff" or "the Government"), brought a civil action against Defendants, Arline and Raymond Grant, for their unpaid federal income tax liabilities.  (*See* Compl. [ECF No. 1]).  A clerk's entry of default was entered against the Grants on February 15, 2001 (*see* [ECF Nos. 7, 8]), and in 2003, final judgment was entered for Plaintiff and against the Grants for an amount over $36 million plus interest.  (*See* Final Judgment [ECF No. 67]).  By Order dated December 22, 2005 ("Repatriation Order" or "December 22 Order"), Mrs. Grant was ordered to appoint a trustee in the United States for two offshore trusts, or in the alternative, to otherwise repatriate the assets held in those trusts in order to satisfy the 2003

---

[1] Unless otherwise indicated, the facts are undisputed.  Relevant portions of the background are repeated from the Order dated March 22, 2013 [ECF No. 169], denying Defendant's Motion to Discharge . . . [ECF No. 164], and Order dated June 22, 2012 [ECF No. 156], granting Plaintiff's second Motion for Order to Show Cause [ECF No. 129].

judgment.  (*See* [ECF No. 117]).  In October 2007, Plaintiff filed a Motion for Issuance of Order to Show Cause [ECF No. 120], as Mrs. Grant had failed to comply with the Repatriation Order. In an Order dated May 27, 2008 ("Denial Order") [ECF No. 123], the Court denied Plaintiff's 2007 Motion for Show Cause Order as it found that Mrs. Grant had sufficiently demonstrated she was then unable to comply with the Repatriation Order.  According to the Court, Mrs. Grant had "made significant efforts to repatriate the funds to the United States, either directly to her or to a U.S. trustee, to no avail."  (*Id.* 2).

On January 13, 2012, Plaintiff filed a second Show Cause Motion [ECF No. 129], after learning that Mrs. Grant had received over $221,000 in principal from the two offshore trusts since the time of the Denial Order.  Mrs. Grant did not dispute that she received the funds and provided none of the funds to Plaintiff.[2]  The Court granted Plaintiff's Motion and required Mrs. Grant to show cause why she should not be held in contempt of court for her failure to comply with the Repatriation Order upon receiving over $221,000 in principal from the subject Trusts. (*See* Order dated June 22, 2012 ("Show Cause Order" or "June 22 Order") 8).  Mrs. Grant then filed a Motion to Discharge the Show Cause Order, which the Court denied, instead holding Mrs. Grant in contempt.  (*See* Order dated Mar. 22, 2013 ("Contempt Order")).[3]  To date, Mrs. Grant has not satisfied the judgment, nor has she paid to Plaintiff any portion of the monies transferred to her from the trusts.

---

[2]  Since the Court issued the Repatriation Order on December 22, 2005, the offshore trusts transferred $506,630 in principal and income (at least $355,556 of which is trust principal) into the bank accounts of Mrs. Grant's children.  Mrs. Grant directs how these funds are used.

[3] Mrs. Grant was held to have "clearly violated the Repatriation Order" (Contempt Order 4), and failed to show cause for that violation as required by the June 22 Order (*see id.*).  To the extent necessary, the Court clarifies that Mrs. Grant is held in contempt of both the Repatriation Order and the June 22 Order.

## II.  LEGAL STANDARD

"[A]n injunction is an equitable remedy . . . [that] should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).   A plaintiff who seeks a permanent injunction must show (1) it has suffered irreparable injury; (2) remedies at law are inadequate to compensate it for that injury; (3) a remedy in equity is warranted in light of balancing the hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction.  *See id.*; *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

## III.  ANALYSIS

As a preliminary matter, Mrs. Grant argues that Plaintiff is barred from the relief it seeks due to Federal Rule of Civil Procedure 69 and the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. §§ 3001–3308.[4]  Further, Mrs. Grant asserts tax liens are not enforceable against foreign trusts.  In essence, Defendant suggests that "[t]his [case] is about a final judgment of money only that was rendered in 2003" (Resp. 10), in an attempt to divorce the cause for the judgment rendered in this matter — her violation of IRS regulations by failing to pay taxes — so that she can argue that the Government lacks broad remedies (such as those under 26 U.S.C. section 7402) to collect those unpaid taxes.   The Court first addresses these arguments before considering the four factors elucidated in *Weinberger*, 456 U.S. at 311–12, and *eBay*, 547 U.S. at 390.

---

[4]  This is not to be confused with the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p, which employs the same acronym.

### A.  Federal Rule of Civil Procedure 69

Mrs. Grant asserts Federal Rule of Civil Procedure 69 mandates that "enforcement proceedings shall be brought in the district where assets are located," through a writ of execution, which "must comply with constitutional due process requirements."  (Resp. 6).  She argues that Plaintiff has failed to comply with the Rule and therefore is barred from seeking a permanent injunction.  Rule 69 provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

FED. R. CIV. P. 69(a)(1).

Mrs. Grant misinterprets Rule 69.  First, nothing in the Rule indicates that enforcement proceedings shall be brought in the district where assets are located.  Rather, the Rule is concerned with the "procedure of the state where the *court* is located."  *Id.* (emphasis added). Second, a court may direct that a money judgment be enforced by means other than a writ of execution.  *See id.*; (*see also* Reply 3 & n.2 (cases cited)).

### B.  Federal Debt Collection Procedure Act

Mrs. Grant next argues that the FDCPA applies to the enforcement of Plaintiff's judgment, giving Mrs. Grant certain rights, such as notice in accord with 28 U.S.C. section 3202[5]

---

[5]   (a) Enforcement remedies.--A judgment may be enforced by any of the remedies set forth in this subchapter. A court may issue other writs pursuant to section 1651 of title 28, United States Code, as necessary to support such remedies, subject to rule 81(b) of the Federal Rules of Civil Procedure.

(b) Notice.--On the commencement by the United States of an action or proceeding under this subchapter to obtain a remedy, the counsel for the United States shall prepare, and

clerk of the court shall issue, a notice in substantially the following form . . . .

and exemption of trust assets — 100% of trust principal and 90% of trust income — from collection pursuant to 28 U.S.C. section 3014.  (*See* Resp. 6–8.)  Additionally, according to Mrs. Grant, the Court's jurisdiction under 26 U.S.C. section 7402 "to make and issue in civil actions, writs and *orders of injunction*, . . . and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws," *id.* (emphasis added), does not preempt her rights under the FDCPA because the Court's Section 7402 powers are not applicable here.  (*See* Resp. 9–10.)

These arguments fail to persuade.  Mrs. Grant has failed to pay her income taxes, in violation of the Internal Revenue Code, to the tune of over $36 million; the Government now seeks an injunction in an effort to collect on those unpaid taxes.  Title 26 U.S.C. section 7402 grants the Court jurisdiction to afford the Government the injunctive relief it seeks, so long as the injunction is "necessary or appropriate" for the enforcement of the internal revenue laws such as the collection of required taxes.  *Id.*  The Government's right to obtain such injunctive relief is not curtailed by the FDCPA.  *See* 28 U.S.C. § 3003(c)(7) (The FDCPA "shall not be construed to supersede or modify the operation of . . . any Federal law authorizing, or any inherent authority of a court to provide, injunctive relief . . . .");  *Sequoia Prop. & Equip., Ltd. P'ship*, 100 F. App'x 638, 640 (9th Cir. 2004) ("The FDCPA is not the exclusive means of collecting a debt.  Indeed, the FDCPA specifically contemplates debt collection through the Internal Revenue Code." (citing 28 U.S.C. §§ 3001(b), 3003(b)[6])).  As was the case in *Sequoia* where the Court found the FDCPA's time limitation inapplicable, the Government's action and present Motion are brought

---

28 U.S.C. § 3202.

[6]  28 U.S.C. § 3003(b)(1) (The FDCPA "shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law . . . to collect taxes or to collect any other amount collectible in the same manner as a tax . . . .").

"under the Internal Revenue Code, 26 U.S.C. §§ 7401–03, not the FDCPA." 100 F. App'x at 641; (*see* Civil Cover Sheet [ECF No. 1, at 4] (listing "cause of action" as "Action to Obtain Judgment for Unpaid Tax Liabilities Pursuant to 26 U.S.C. § 7402")). As such, the notice and exempt provisions of the FDCPA do not apply here.[7]

## C. Tax Liens on Foreign Trusts

Mrs. Grant next argues that a permanent injunction cannot issue because (1) the Government is prohibited from levying its tax lien against the offshore trusts, and (2) Mrs. Grant lacks "discernable assets that are subject to execution" of the Final Judgment. (Resp. 5). These arguments fail to persuade.

As an overarching matter, the Court has already determined that "any property belonging to either or both [of the Grants] is subject to a lien by the United States." (Report 3 [ECF No. 114]; Repatriation Order 1 (ratifying and adopting Report)). Further, the Court held that Mrs. Grant has sufficient power to repatriate the corpus of the offshore trusts[8] such that once those funds are in the United States they must be applied to her tax debt. (*See* Report 9 ("[Mrs. Grant] can be required to act legally in this country, and once the trust is repatriated . . . then foreign law will no longer apply, and no violations of foreign law will occur.")). Thus, simply put, Mrs. Grant's argument that the Government "cannot enforce a lien against the trusts because either no lien attaches or the procedure for enforcement of a lien — a levy — is unavailable" (Resp. 5–6),

---

[7] Mrs. Grant suggests in a footnote that Plaintiff "conceded the applicability of New York law and the Federal Debt Collection Procedure Act." (Resp. 7 n.6). She cites to the "Gov't's reply brief in support of order of repatriation Page 18." (*Id.*). It is unclear to which document Plaintiff directs the Court's attention as she does not provide a particular docket entry in the record. Indeed, the Court observes that the Government's Reply [ECF No. 112] in support of a repatriation order is only seven pages long. In any event, Mrs. Grant fails to explain why a party's purported past "concession" in motion papers regarding an issue of law now hinders the Court from reviewing that legal issue for the first time.

[8] Since 2008, Mrs. Grant has demonstrated such control by having over $221,000 in trust funds deposited into her children's accounts.

raises legal issues already decided by the Court, and does not otherwise speak to the availability of Section 7402 injunctive relief for the Government.  A valid lien has attached to the trusts, and the Repatriation Order requires repatriated trust funds to be submitted to Plaintiff to satisfy that lien.

### D.  Elements Required for Permanent Injunction

During and since the pendency of the Plaintiff's prior post-judgment motions, Mrs. Grant has engaged in a scheme to avoid collection of her liabilities by having trust funds directly deposited into accounts in her children's names.  Altogether, since December 22, 2005 when the Court ordered Mrs. Grant to repatriate the assets of the trusts, no money has been paid toward the judgment against her while $506,630 has been transferred from the trusts into accounts held in the names of her children and used to pay expenses at her direction.  Through this scheme, Mrs. Grant has dissipated hundreds of thousands of dollars of assets to which federal tax liens attach. Thus, for the following reasons, the Court finds that Plaintiff has demonstrated all four elements required for a permanent injunction.  *See Weinberger*, 456 U.S. at 311–12; *eBay*, 547 U.S. at 390.

First, Mrs. Grant's scheme has caused irreparable harm to the United States by dissipating limited assets to which federal tax liens attach.  Plaintiff's suggestion that the degree of such harm is "undercut by [the Government's] unreasonable delay in seeking injunctive relief" (Resp. 13), lacks any basis in the record.  As the Court previously noted, Mrs. Grant failed to expressly and timely inform Plaintiff's counsel or the Court of her ability to repatriate trust funds, contrary to her prior representations which led the Court to deny the Plaintiff's initial motion for a show cause order, filed in 2007.  Further, the Government has persistently attempted to collect on Mrs. Grant's unpaid taxes, evidenced by its: (1) entrance into an

installment agreement with the Grants in 1994 following years of litigation in Tax Court; (2) filing of this litigation in 2000 after the Grants failed to comply with terms of the installment agreement and no compromise could be reached; and (3) steadfast pursuit for injunctive relief upon learning that Mrs. Grant repatriated trust assets after the Repatriation Order issued in 2008 (*see, e.g.*, *United States v. Grant*, No. 11-24031 (S.D. Fla.) (Complaint for injunctive relief filed Nov. 8, 2011 [ECF No. 1])).[9]  Accordingly, the Court finds that the significance of Plaintiff's delay in seeking injunctive relief, if any, is far outweighed by the harm caused to the United States by Mrs. Grant and her dogged avoidance of her tax liabilities.

Second, Plaintiff is without an adequate remedy at law.  Mrs. Grant argues that the Government can obtain legal relief by "utiliz[ing] the judgment enforcement procedures . . . [outlined in] Fed. R. Civ. P. 69 and the Federal Debt Collection [Procedure] Act."  (Resp. 13).  Such argument rings hollow as Mrs. Grant's repatriation scheme has endured despite the Court's Final Judgment, Repatriation Order, Show Cause Order, and Contempt Order, and Defendant fails to explain why Rule 69 or the FDCPA will provide Plaintiff an adequate remedy.  Moreover, as previously discussed, the FDCPA does not foreclose the Government's ability to seek relief pursuant to Section 7402.  (*See supra* Part III.B.).

Third, the balance of hardships weighs heavily in favor of the United States because the trust assets which Mrs. Grant is dissipating are attached with a federal tax lien, and thus, do not belong to her or her children.  Fourth, the public interest will be served by the application of available trust assets to Mrs. Grant's significant unpaid income tax liabilities.  That Mrs. Grant is ill, is eighty-four years old, and will no longer be able to use trust funds to "pay for her

---

[9]  The Court's Order dated November 21, 2011 denying the Government's Motion for Preliminary Injunction in the separately filed action (*see United States v. Grant*, No. 11-24031 (S.D. Fla.) ([ECF No. 15])), does not bear on the Court's analysis here.

immediate living expenses and attorneys' fees" or "provide for [herself] in a very modest fashion" (Resp. 13), means little with respect to either factor — the record shows Mrs. Grant continues to receive the exempt portion of her Social Security benefits, and that she has children who care for her, or at the very least, follow her instruction.  Further, the injunction does not require Mrs. Grant to make any false statements to trustees,[10] and the Government is not "skirting" any mandatory collection procedures.  Indeed, the record demonstrates that it is Mrs. Grant who has repeatedly dodged Plaintiff's valid attempts to collect on her unpaid tax liabilities.

Finally, the Court finds that the permanent injunction being sought by the United States is appropriate and necessary for the enforcement of the internal revenue laws and the lawful judgment of the Court.  *See* 26 U.S.C. 7402(a).  To halt the ongoing dissipation of assets to which tax liens attach, it is appropriate and necessary to prohibit Mrs. Grant from continuing to receive trust assets without turning them over to the United States.  An injunction compelling her to regularly request the income of the offshore trusts and turn those funds over to the United States is appropriate and necessary to partially satisfy the judgment against her and provide payments towards her significant unpaid income tax liabilities.  For this reason it is also appropriate and necessary that the injunction compel Mrs. Grant to turn over to the United States all assets currently in her possession, custody, or control which originated from the trusts, and any other distributions from the trusts which she receives in the future.  Finally, it is appropriate

---

[10]  Mrs. Grant asserts that to satisfy the Government's proposed injunction, she would be required to lie to her trustees by, for example, stating that she will use future trust distributions for her health or living expenses, when in fact they are to be handed over to Plaintiff.  (*See* Resp. 13).  This is not so.  One of the offshore trusts, the "Jersey Trust" (*see* Pl.'s Renewed Mot. dated May 27, 2003, Ex. B [ECF No. 69]), provides that every calendar year beginning with 1995, Mrs. Grant has the right to withdraw up to 10 percent of the fair market value of the entire trust estate as of the first day of that year.  (*See* Jersey Trust 44–45).  Further, funds already distributed by trustees for Mrs. Grant's health and maintenance were not issued pursuant to any falsehoods.

and necessary that the injunction prohibit Mrs. Grant, and those acting in concert with her, from notifying the trustees of the offshore trusts of the existence of the injunction or that her requests for income are being compelled in order to prevent her and the trustees from circumventing this Order.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion **[ECF No. 130]** is **GRANTED**.  It is **FURTHER ORDERED** that:

1) Arline Grant request on a quarterly basis that the trustees of her offshore trusts, known as the Jersey and Bermuda trusts, transfer all available income to accounts within the United States held in her name or in the names of Robert Grant, Kenneth Grant, or Pamela Bilfeld;

2) Arline Grant and any other person acting in concert and/or participation with her provide to the United States all funds that have been transferred in the past directly or indirectly from the income of the Jersey and Bermuda trusts to accounts held in her name or the names of Robert Grant, Pamela Bilfeld, and/or Kenneth Grant, or the name of any other person acting in concert or participation with Arline Grant, and that are still in the possession, custody, or control of Arline Grant or her children, or other person.  Specifically, this includes, but is not limited to, the following accounts:

    a.  Account number ending 1441, held in the name of Pamela Bilfeld at the First National Bank of Long Island,

    b.  Account number ending 5169, held in the name of Pamela Bilfeld at HSBC Bank,

     c.   Account number ending 1545, held in the names of Pamela Bilfeld and Robert Grant at Capital One Bank,

     d.   Account number ending 0148, held in the name of Robert Grant at Sovereign Bank, and

     e.   Account held in the name of Arline Grant at The Capital G Trust, Ltd., in Bermuda;

3)  Arline Grant and any other person acting in concert and/or participation with her, or under her direction or control, provide to the United States all funds transferred directly or indirectly from the Jersey and Bermuda trusts to any United States account in the future, including those accounts specified in paragraphs 2(a)–(e) above;

4)  Neither Arline Grant nor anyone acting in concert and/or participation with her, either directly or indirectly, or under her direction or control, open any other accounts at any bank or other financial institution anywhere in order to receive funds from the Jersey or Bermuda trusts without providing those funds immediately upon receipt to the United States;

5)  Arline Grant and anyone acting in concert and/or participation with her, either directly or indirectly, or under her direction and control, are prohibited from spending, transferring, or otherwise dissipating any assets of the Bermuda and Jersey trusts, including spending funds transferred from the trusts to any account, including any account held in her children's names, except to provide those funds to the United States.

6)  Arline Grant and anyone acting in concert and/or participation with her, either directly or indirectly, or under her direction or control, or anyone seeking to help

Case No. 00-08986-ALTONAGA/Simonton

Arline Grant shield her assets from going toward the payment of her tax liabilities, are prohibited from communicating to the trustees of the trusts or in a manner calculated to reach the trustees of the trusts the existence of this injunction or any other order in this case or the suggestion that distributions requested are being compelled.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of April, 2013.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record